*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0378**

Sherrie Ann Williams,
Appellant,

vs.

Midwest Bonding,
Respondent.

**Filed December 1, 2025**
**Affirmed**
**Schmidt, Judge**

Winona County District Court
File No. 85-CV-24-1506

Sherrie Ann Williams, Bloomington, Minnesota (pro se appellant)

David M. Aafedt, Margaret M. Green, Winthrop & Weinstine, P.A., Minneapolis,
Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Schmidt, Judge; and Smith,
John, Judge.[*]

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Plaintiff-appellant Sherrie Ann Williams challenges the district court's order
granting defendant-respondent Midwest Bonding's motion to dismiss. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

# FACTS

Williams' son was charged with a criminal offense, and the district court set conditional bail at $150,000. Williams contacted Midwest Bonding to secure a bail bond for her son. Midwest Bonding agreed to pay bail for Williams' son in exchange for a 10% bail bond premium of $15,000. Midwest Bonding presented Williams with an indemnitor application and agreement. Williams did not qualify to sign the indemnitor agreement. Instead, E.R. and S.R.-W. signed the indemnification agreement.

Midwest Bonding collected $7,000 of the $15,000 bail bond premium in three payments and provided a bail bond premium receipt showing a balance due of $8,000. E.R. signed that receipt. Midwest Bonding also provided a promissory note with a scheduled payment plan for the remaining balance. E.R. and S.R.-W. signed the promissory note. Williams did not sign any documents relating to the bail bond transaction. Midwest Bonding received the first $800 payment from the promissory note payment schedule but did not receive any subsequent payments.

Midwest Bonding pursued a collection claim against E.R. Williams then brought claims against Midwest Bonding in conciliation court, asserting that Midwest Bonding should not bring its claim against E.R. The conciliation court determined that Williams did not have standing because there was no contract between Williams and Midwest Bonding. The conciliation court entered judgment for Midwest Bonding. Williams appealed the conciliation court decision to district court. The district court vacated the conciliation court judgment and removed the case to district court.

Williams filed a new complaint against Midwest Bonding in district court. The complaint alleged that Williams partially paid the bond premium and the first promissory note payment, $7,800 in total. The complaint alleged that Midwest Bonding lied about the process and payments. The complaint also claimed that Midwest Bonding violated many statutes, a Minnesota Department of Commerce Consent Order, and the Minnesota State Court Administrator's Office standards of conduct. Williams sought $7,800 in damages.

Midwest Bonding moved to dismiss the complaint. Williams opposed the motion to dismiss and moved to amend her complaint to include new facts and claims.

At the hearing on the parties' motions, Williams revealed the additional facts she sought to include in her amended complaint: (1) her son did not sign the bail bond agreement, and (2) the Minnesota Department of Commerce was continuing to investigate her claims against Midwest Bonding.

The district court granted Midwest Bonding's motion to dismiss. The district court determined that Williams lacked standing because she is not a party to the transaction or a third-party beneficiary. Williams sought permission to move for reconsideration, which the district court denied.

Williams appeals.

**DECISION**

Williams raises three arguments in this appeal: (1) the district court erred in granting Midwest Bonding's motion to dismiss; (2) the district court erred by failing to rule on her motion to amend her complaint; and (3) the district court clearly erred in its factual findings. We address each argument in turn.

3

**I.    The district court did not err when it granted the motion to dismiss.**

When reviewing the dismissal of a complaint for failure to state a claim on which relief can be granted pursuant, "the question before this court is whether the complaint sets forth a legally sufficient claim for relief." *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn. 2008). We review this question de novo. *See id.* at 229.

**A.    Williams' contract-based claim fails.**

"Generally, the [district] court may not consider extrinsic evidence on a motion to dismiss pursuant to Minn. R. Civ. P. 12.02(e)." *In re Hennepin Cnty 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 497 (Minn. 1995). But when a "complaint refers to [a] contract and the contract is central to the claims alleged," the district court may consider the entire written contract when deciding the motion to dismiss. *Id.*

Williams' complaint references the bail-bond contract. Thus, the district court properly looked to the plain language of that contract in deciding the motion to dismiss. *Id.* The district court determined that Williams lacks standing to pursue the contract claim because she is not a party to the contract. We agree.

The contract here is between Midwest Bonding and the two indemnitors, E.R. and S.R.-W. The indemnification agreement includes Williams' personal information under the "REFERENCES" section. The district court correctly determined that Williams lacks standing to assert her contract-based claims because she is not a party to the contract.

Williams argues that there is "a completely separate" verbal contract between her and Midwest Bonding under which Midwest Bonding charged her $7,000, as demonstrated by her text messages and bank statements. Midwest Bonding does not dispute that

4

Williams paid $7,000 towards the bond premium.[1] But Williams was not made an indemnitor and was not named on the promissory note.[2] As such, the district court properly concluded that Williams is not a party to the contract and, therefore, lacks standing to assert claims related to the contract between Midwest Bonding and the indemnitors.

**B.      Williams' statutory claims fail.**

Williams' complaint asserts that Midwest Bonding violated multiple Minnesota consumer-protection statutes. Those statutes are: Minn. Stat. § 325F.69 (2024), which prohibits consumer fraud; Minn. Stat. § 325F.67 (2024), which prohibits false representations in advertising; Minn. Stat. § 325D.44 (2024),[3] which prohibits deceptive trade practices; and Minn. Stat. §§ 72A.19, .494 (2024),[4] which prohibits unfair and deceptive practices in insurance and outlines notice requirements for insurance agents. The district court did not expressly address these claims. Instead, the court dismissed the entire complaint for lack of standing because Williams was not a party to the contract.

---

[1] Williams' complaint references bank statements and text messages that support the undisputed fact that Willaims paid the initial $7,000. The references in the complaint allowed the district court to consider the documents "without converting the motion to dismiss to one for summary judgment." *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004).

[2] Williams makes arguments about her son having signed the contract with Midwest Bonding, but that would not make Williams herself a party to the contract.

[3] Minn. Stat. § 325D.44 was amended in 2025. *See* 2025 Minn. Laws ch. 20, § 247. The amendment did not affect Williams' rights.

[4] The complaint's citation to the Minnesota Department of Commerce 2016 Consent Order and the Minnesota State Court Administrator's Office's bail-bond procedures do not state a claim upon which relief can be granted. Neither the Consent Order nor the bail-bond procedures authorize private causes of actions.

Although the district court should have explicitly addressed the statutory claims, we conclude that it did not err in implicitly rejecting the claims when it dismissed the complaint. The district court appropriately determined, under the facts presented in the complaint, that Williams' claims could only stem from the contract.

Besides lacking standing, Williams' statutory claims fail because the complaint does not allege facts that, if taken as true, give notice of a violation of any of these statutes. *See Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 325–6 (Minn. 2019) (quoting *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010)). Williams' consumer-protection statutory claims also fall short because they do not allege any benefit to the public. *See* Minn. Stat. § 8.31, subd. 3a (2024) (authorizing claims under the consumer-protection act pursuant to the private attorney general statute). One necessary element for a consumer-protection claim is that the action serves a public benefit. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000) ("[W]e hold that the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public."). We have held that a claim like Williams'—in which the allegations in the complaint are limited to the individualized harm caused to the person asserting the claim—"does not advance state interests and has no public benefit." *Mobile Diagnostic Imaging, Inc. v. Hooten*, 889 N.W.2d 27, 34 (Minn. App. 2016). And Williams did not seek to add facts or claims which would allege anything beyond an individualized harm. Thus, Williams' complaint, even were she granted leave to amend, fails to sufficiently allege a claim for relief under the statutes cited in her complaint.

**II.    The district court did not abuse its discretion by implicitly denying the motion to amend the complaint.**

Williams argues that the district court abused its discretion by failing to rule on her motion to amend the complaint. The "decision to permit or deny amendments to pleadings is within the discretion of the district court and will not be reversed absent a clear abuse of discretion." *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 295 (Minn. 2003). "Appellate courts cannot assume a district court erred by failing to address a motion, and silence on a motion is therefore treated as an implicit denial of the motion." *Palldium Holdings, LLC v. Zuni Mortg. Loan Trust 2006-OA1*, 775 N.W.2d 168, 177–8 (Minn. App. 2009), *rev. denied* (Minn. Jan. 27, 2010).

At the motion-to-dismiss hearing, Williams argued for permission to add the following information to her complaint: (1) her son did not sign the bail-bond agreement, and (2) the department of commerce was investigating her claims against Midwest Bonding. But these additional facts do not provide Williams with standing nor do they serve any other useful purpose for this case. Thus, the district court did not abuse its discretion by implicitly denying the motion to amend the complaint. *See U.S. Bank Nat'l Ass'n v. RBP Realty, LLC*, 888 N.W.2d 699, 705 (Minn. App. 2016) ("A plaintiff may not amend the complaint if the proposed amendment would be futile because it would serve no useful purpose."), *rev. denied* (Minn. Apr. 18, 2017).

**III.    The alleged errors in the order do not require reversal.**

Williams raises five alleged errors in the district court's memorandum: (1) the finding that Williams did not provide her information on the agreement; (2) the finding that Williams was not a beneficiary to the contract; (3) the failure to find that Williams paid the premium; (4) the district court "giv[ing] the false perception that appellant was not involved in the transaction"; and (5) the "wrongful[] state[ment] that [E.R.] and [S.R.-W.] provided their identification card[s]."

None of these alleged errors are material to the district court's determination that Williams lacked standing to pursue her claims.  The undisputed facts are that Williams was neither an indemnitor nor a party to the contract with Midwest Bonding.

**Affirmed.**